Call our next case, Feesers v. Michael Foods & Sodexo. Good morning, Your Honors. My name is Jeffrey Kessler. May it please the Court, I am here on behalf of the appellant, Feesers, in this matter. I will speak up. I hope that Judge Aldisert can hear me. I will apologize. I had a terrible cold, Your Honors. The louder I talk, the worse it's going to sound, but I will do the best that I can to be heard. The essential issue of this appeal is the standard for proving competitive impact under the Robinson-Patman Act. It's important at the outset to note none of the other elements of the offense are at issue. In fact, the Court found that there were sales of goods of much greater quality, that there was substantial discrimination over a prolonged period, four years of time, at a level of almost 67 to 71 percent, which, Your Honors, as long as I've looked at Robinson-Patman cases, that's one of the highest levels of discrimination I've ever seen in a case law, particularly in a food industry, and that there were two So what we were down to is the last element, the final element, of proving a prior facial case for liability, and I would note here again, Your Honor, there's no issue of damages in this case. This is solely an adjunctive relief action, so the only issue is was there a basis for liability, and this has nothing to do with Section 4 of the Sherman Act, which has to do with causation, and one of the areas that's clear here is that the judge below cited the Perkins case, which is a causation case, on damages that this Court's precedent sets up. Sorry, Your Honor. Yeah, let's get to this issue which you're saying is the central issue, and that is whether it was established that you folks were in competition. Very clearly, Your Honor. All right, and I'm assuming you have no argument with the statement of law that this Court in Stellwagen took from the Best Brands case, that in order to be in competition, they have to be, I think the quote is, as of the price differential was imposed, the favored and disfavored purchasers competed at the same functional level, i.e. all wholesalers or all retailers, end quote. That's a given, right? Your Honor, that is correct with one modification. The one modification is, it is very clear from the Supreme Court of the law of this circuit that when you're looking at tertiary line injury, which is what the Court below found was here, not secondary line injury, that it also could be competition with the customer of the person who received the discrimination. So it doesn't necessarily have to be all wholesalers and retailers at the level of purchase. What you're looking at is the level of the competitive impact, whether it's secondary or tertiary line. So here the comparison is between Sodexo and between by-client feasors. Well, then they have to be competitors. Absolutely, Your Honor. The question is, what does it mean to be a competitor? Well, let's back up and let's look at Section 2A. Yes, Your Honor. And the statutory language is that there would be discrimination in price between different purchasers of commodities, where the effect may be to substantially lessen competition with any person who either grants or knowingly receives the benefit, or with customers of either of them. Correct, Your Honor. So your argument is, the purchasers from Michael Foos include Feasors and Cisco. But if the effect is substantially to lessen competition as between Feasors and a customer of Cisco, namely Sodexo, that that fits within 2A? Absolutely, Your Honor. In fact, below, we argue the alternative. We believe there's evidence that Sodexo was the purchaser, but even if it wasn't, it's covered, and that's what the court below found, and that issue is not challenged on appeal. So it's conceded in this appeal that that element is satisfied. The only issue now is the competition issue. What does it mean to be an actual competition? And on this point, Your Honor, it's very important when you look at the Morton Salt case, and the Howe case, and the Steele-Wagon case, and the Feasors case for the circuit, at least the Oregon and Feasors, Howe v. the Second Leader, what the competition simply means is are you seeking the same customers, the same dollars? Now, let me ask you this. Is there any evidence? I mean, your opponents say in their brief that, in fact, you admit that Feasors and Sodexo have never submitted competing bids ever. That would be completely false, Your Honor, and I have no certification for that. In fact, what the evidence is unequivocally in this case is we went through their customer list because they produced a discovery and looked at ours, and we then put in affidavits identifying 600 customers, which fall into one of three categories, either customers that we had, which... I think we may be talking past, or maybe they are just flat out saying it wrong, but I'm they say, quote, Feasors also did not contest that Feasors and Sodexo have never submitted competing bids or proposals in response to any request for proposal issued by any institution, close quote. In other words, I don't think they're contesting that you sell food to people, and they sell food products at times, too, but that you're competing in totally different markets, and that the evidence of that is there's never been a competitive bid situation ever between the two. And, Your Honor, that's completely wrong. Let me tell you what I think they mean by that sentence. They have no citation, so I can't tell you... But you can't cite from a nonexistent evidence. No, but let me tell you what I think they're saying. This is not an industry where most of the customers put out what's called RFPs, requests for proposals. So it may be true that there's no, quote, a request for a proposal in which there were bids. There are some things like state institutions like Penn State might do that. That's not what this is about. What we have is undisputed evidence, for example, that a number of Feasors customers, while Feasors were serving them, that Sodexo came in, made price proposals to them right while they were Feasors customers in order to convert them to Sodexo customers. That's undisputed. Now, that includes St. Mary's Catholic School. Correct. That includes Meadows Nursing Home. But Meadows was actually the reverse. Meadows is we went in to get back a Sodexo customer. So that's still functional competition. What else do you have in there? We have 12 specific examples, Your Honor. Well, I'm sorry. You have 600. 12 were discussed at length in the affidavits. And that includes, Your Honor, in the Todd Declaration, which is A7072 in the record. That covers St. Mary's and Meadows. Then we have the Bowman Declaration, which is 7126, Your Honor, and that covers Graysdale County Home. Then we have the State's A713840 and the Lincoln Declaration, A713234, which identifies a number of others in that record. But, Mr. Kessler, I understand the point you are making. This is general discernment. But do you agree that for Boston to function, to be effective, the competing organizations must be on the same functioning level? No, Your Honor, I don't. They have to compete for the same goods of, the same goods of like greater quality. If you look at the how cage... Well, you're saying, your answer is no. That's correct, Your Honor. It's very clear, tertiary lines. You say that Caesars is a distributor, and are you saying that Modesto is a distributor? It engages, this is what I'd say, Your Honor, it engages in the... Please answer the question. Yes, it is a distributor, Your Honor, because it engages in the procurement of food, the... Well, just a minute, please, because I know that we're talking about the same thing. I was under the impression that Sodexo purchased from Cisco, which was a distributor, and the competitors here were Caesars and Cisco, because both were distributors. No, Your Honor, what happened in this situation is that Sodexo goes to Bico Foods directly and negotiates special prices... I know, I know. We haven't got that far yet. Do you agree with what I said? I don't agree that Sodexo simply purchases from a distributor. It negotiates the prices for Cisco, and it appoints Cisco as its agent, in effect, to keep up the dollar in food. As to, can you agree that Caesars and Cisco are distributors and are in the same business? Absolutely, Your Honor, they're both distributors. They're competitors, right? Yes, they are competitors to some customers, no question. But you say that they are on the same functional level. Yes, they are on the same functional level, as is Sodexo. Cisco, as a distributor, sells to Sodexo, which is an institutional end user, is that right? No, Your Honor. Isn't the recall here... Let me explain. Cisco delivers... the customers here are those... I'm sorry? Cisco... I'm sorry. Sodexo is a food service manager. It doesn't have warehouses. It doesn't have trucks. It doesn't have an inventory of products. But Caesars does, as Cisco does. So the question is, how can you say that Sodexo is on the same functional level as Caesars? Your Honor, if I can elaborate a little bit, I'll give you an example that I think makes this clear. The issue for actual competition is not... you can have one company who can do many different things and another company who does one thing. Is there an overlap between the one thing they do? So, for example, the Robinson-Patton Act comes from the A&P and the Bob and Pop store. We all know that. It's well established in the case law. The A&P may do many things. It may sell film. It may sell magazines. It may provide services. But it also sells food and competition. Let me ask you a question. Doesn't there come a point where what people are doing is so different that they're just not doing the same thing? Let's take the steel wagon thing. Yes. You got a company that sells asphalt roofing shingles, okay? And that company sells to general contractors. And then another company comes in and says, you know what? To the general contractor, you should stop being a general contractor. You should start being a real estate developer. And we'll come in and we'll build houses for you. We'll do the whole thing, start to finish. You market it. You put it out there. Now, I guess you could say that they're distributing shingles to this outfit they're pitching because they're going to put shingles on the roof. But are you saying that selling shingles is the same thing as selling a house under that circumstance? No, Your Honor. I'm not. But these facts are completely different. What we have here, for example, undisputed. If you take a look, for example, at A2025. Before you take me there, let me ask a question about what I understand the facts to be because it might get us quicker to whether we have an understanding that's mutual. I understand from your briefing and your opponent's briefing that Sodexo goes into some institutions and says, Stop taking care of this yourself. Give it to us. We'll do the whole thing for you. Don't worry about it. We'll run this business. And then they go and they, through distribution networks, including Cisco, formerly Feesers, too, they get people to send them supplies that they use at the institution to sell food to customers. Am I confused about that? You're not confused, but it's not entirely accurate, Your Honor. Let me add something. And this is by way of my understanding. Sodexo also contracts with third parties to sell goods to them. Correct, Your Honor. And that is, in effect, what Feesers does. Correct, Your Honor. It sells goods to third parties. Now, Sodexo also does some other stuff. But are there specific customers of Sodexo to whom it only sells goods? Yes, that would be through its Integra division, which is called its GPO. There, it frankly is a headquarters of Feesers. So it's not quite the same as Judge Jordan's analogy because his analogy doesn't have within it the fact that the general contractor comes in and says, I'm selling you shingles. Whereas it does, it's a very, it's a unique fact pattern. Yes, Your Honor. In fact, what I wanted to point out, I was going to go to this, is that there are very documents where they come in, if you look at them, I'll go to A4294. They go into a customer, a Feeser customer, and they'll say something like, as the largest private purchaser of food in the country, Sodexo brings in the best at a price point unavailable to individual schools or small providers. Or in A3650, they say, Sodexo's clients benefit from the combined purchasing power of our company. Our food supply prices, our food supply prices are exceptional. Our prices for most items range from 5% to 25% lower than the next one. This is how they say their business is, and I can quote another one. Mr. Kessler, can I ask you another question? I have a preliminary question. Yes. If we agree with you that the district court went off on a tangent with respect to this price differential concern, and we say that's not the standard, you have to decide whether they are competitors, and you have to look at 2A, and once you get there, Morton Salt probably resolves the injury point. Aren't you essentially asking us to say the district court got it wrong, send it back for her to do what she should have done, and you make these arguments to her? I will certainly be happy with that, Your Honor. I will also think I have a basis for actually for somebody to judge it in my favor. The only reason for that is because of the Morton Salt. How can you get summary judgment in your favor? It wasn't a final order. I'll explain to that, Your Honor. I move for summary judgment as well, which is denied. But it's denied. That's not reviewable. I think on a cross appeal, because it was a final judgment the other way, the court is empowered to do that. I could be wrong about that, but I believe you. I think if we undo the summary judgment that they were granted, then yours becomes a final one. I will be very content with that, Your Honor. I don't want to be greedy. I'll be very happy for it to go back with instructions of the proper standard. The point I wanted to make here, Your Honor, is exactly 100% here. The document showed they were selling food. Judge Rambo said, Sodexo argued, or Michael Foods argued, well, we just said sell a bundle of services. It said, no, your own contracts say you sell food individually at a special markup. You go into customers and sell food with respect to that authority, Your Honor. I believe this is exactly George Howe. I'm done. I'll see you on rebuttal. Thank you. Judge Aldiser, I think we'll hear from Mr. Kessler on rebuttal. Is that all right? Yeah, fine. All right. Mr. Gaynor? Cold or no cold, we could hear Mr. Kessler. Good. Good afternoon. May it please the court. My name is Martin Gaynor. I represent the appellees at Sodexo. And I'll also be arguing on behalf of the other appellee, Michael Foods, this afternoon. Before I get started, I just want to hit this Integra point right off the top, because Mr. Kessler said in response to Judge Randall's question about, isn't it true that in some circumstances Sodexo contracts to sell food? Implication being similar to feesers. Answer to that is absolutely not. Integra, the record is undisputed, never buys, never sells anything, period. The sites for that are. But don't your contracts indicate that you will arrange for food procurement and that the facility pays you for food as an operating expense? We have to treat the two separately, Integra and then the regular Sodexo business. They're operated as two separate businesses. They have separate types of contracts. But it's not an independent corporation, is it? No, it's not. They're both owned by Sodexo. Your question was directed to don't the contracts say. The contracts for Integra are fundamentally different. Under the contracts for Integra. But Integra is Sodexo. It is Sodexo. It is owned by Sodexo. Well, it's a division. It's not a separate corporation, is it? But in this context where a company, say Hard Rock Cafe, enters into an Integra contract, and Sodexo agrees to do certain things for Hard Rock Cafe, they never agree to sell them food, ever. And they do not sell them food. But Integra does. No, Integra does not. That's what I'm telling you. The contract that Integra enters into with Hard Rock Cafe does not state that Integra is going to sell any food to Hard Rock Cafe. What they're doing is they're agreeing to provide certain procurement services, which basically means they will help a company like Hard Rock Cafe with quality control, things of that nature, being able to help them organize purchasing for large numbers of separate restaurants. The record shows, this is in the record, that most of Integra's customers, they don't have many, are large companies with national presence that typically have more than $25 million a year in purchases. But you did not sell food, and Sodexo and the facility will pay you the invoice cost of the food plus .9% of the invoice amounts as a procurement expense as part of the facility's payment to you of operating expenses. That is correct. In some circumstances. Now, this is the core of Sodexo business. This is not Integra that Your Honor is referring to now. I don't care what it is. To my mind, you sell food. Well, I think we have to look at, you know, we have different contractual arrangements with different customers, and the question in this case is, do we ever compete with Feesers in any of those circumstances? And what about their affidavits to the effect that you do, those instances that they've cited in the record? None of those instances show actual head-to-head competition between Sodexo and Feesers, as required by this Court's decision in Snow White and by the Supreme Court's recent decision in Volvo Trucks. Those instances that they have, the 12 or so, are facts, but none of them show that there was a decision to switch from CELFOP to Sodexo Managed or from Sodexo Managed back to CELFOP based on the cost of goods. Who said based on the cost of goods has anything to do with the 2A violation? Well, in this situation where we are not dealing with a typical Robinson-Pattman type of fact pattern, where you have, say, Morton Salt, you had a chain grocery store competing against a small grocery store, no question that they were competing to sell salt to customers. In Stellwagen, you had roofers who were buying roofing tiles. There was no question that they were doing the same thing. Here you have an unusual situation where you have a food service management company that goes in and says, as Judge Jordan pointed out, we'll take over your whole food service problem for you. We'll do everything. We will hire the employees. We will order the food. We will find out who we should buy the food from, and then we'll make the food. And then we will bill you in one of a variety of different needs. And they have different types of contracts based on the requirements of the institution. But part of what you do is sell them, let's say, cans of food, and they get those cans of food through you, whereas they could have gone to Feesers to buy those cans of good and have you do the other 40% of the bundled duties or whatever. No, not in those circumstances, because in the circumstances where we're hired, we are the operator. We are the ones deciding what food to buy, buying the food, placing the orders, and making the meals. You don't have a situation where the client is sort of buying the food for you, telling you what to make, et cetera, et cetera. Does Sodexo ever sell services? I'm talking about Core Sodexo, not Integra. Does Sodexo ever sell services to self-operators? I think your question may have been do they sell food to self-operators. No, I'm trying to find out. Does Sodexo sell anything to self-operators? No, but what they do try to do is turn to self-operators and say, don't be a self-operator, we'll take it over. Fine. Now, does Integra ever sell services to self-operators? Yes, that is what they do. What do they sell? They sell services. They sell, like I said, they can help with quality control, creating systems for how purchasing can be coordinated where there are large numbers of restaurants, say Hard Rock Cafe, making sure that, say, the ribs that Hard Rock Cafe are going to buy are all of a certain quality, even though it's spread out across the country, things like that. It's services. It's never goods. Do they ever sell food? Never, and that's in the record. Then where is that in the record specifically? That is in the record. The sites would be A7513 is the page of our summary judgment before we went through it. Pages A7607 through 7623 are the pages from Mr. Johnston's deposition who runs Integra, explaining what they do and stating that they never buy or sell anything. And there's no contradictory evidence in the record. Would you explain again then how this specific instance cited by Mr. Kessler in their record of competition where someone dealt with Feesers and then were basically lured to Sodexo, how does that not show competition? With all due respect, Your Honor, I think we can't just sort of say, well, here are the circumstances, because the circumstances for each one were different. One commonality is there's no circumstance ever where Sodexo went to them and said, hey, we would like to sell you Michael Foods eggs and Michael Foods potatoes, which is what this case is supposed to be about. That's number one. Number two, there's never any instance where Sodexo came in and said, we will just sell you food. You call us up, you order the food, and we will deliver boxes of food to you. It is always, we can help you out, we can make your food service a lot better, we can streamline your operation by taking the responsibilities for all the food service and taking it over. And then we will come up with a variety of different ways of charging for that. Sometimes Sodexo will go in and essentially just operate as a stand-alone restaurant. In that situation, none of the costs even get passed through to the institution. Sodexo, if it makes money, it makes money. If it doesn't, it doesn't. Other types of situations, what Sodexo basically does is go in and charge a management fee for doing what it does, and then it passes through the other costs, including food, including insurance, including all the other operating costs. Any invoices just have a line item that says food, insurance, labor, et cetera. So you're saying that in a contract for a full service, which is what you do outside of Integra, if someone said, we want everything, but we're going to get our food from Feesers, or we're going to do something on our own, you would not entertain that, is that correct? I don't think that's ever happened. What happens sometimes that's similar to that is with respect to, say, some hospitals, some large hospital chains, they will be a member of a GPO that actually gets a better price than Sodexo gets, and so the hospital will say to Feesers or Sodexo, we are going to use the GPO and their distributor, because the GPO will also have a contract with a distributor like Cisco or US Foods or Feesers or somebody else, and we'll use them. Those are rare, but there are some of those typically in that situation. So there are instances where you'll do everything except handle the acquisition of the food in some fashion, but there are no situations where you'll only give the food and not the rest of the stuff. That's correct. Right? That's correct. In those situations, like with the health care GPOs, we would still be on-site doing the ordering, doing the menus, selecting the food, et cetera. In front of the court is an appendix with about 12,500 pages in it. We know. And the good news is there really is, one thing we can't agree on, the only thing that's before the court is this issue of what is the standard for actual competition, and in all those 12,500 pages, which is a distillation, if that's the appropriate word for that many pages, of a record that included 25 depositions and hundreds of thousands of pages, and yet all we have is evidence. There are these handful of examples, none of which are tied to food. None of those situations can the court draw an inference from the facts there that the decision to switch from one to the other was driven by the cost of food, much less the cost of the products that are at issue in this case, microfoods, eggs, and potatoes. Also, Judge Jordan asked a question that was very important, which was, is there ever an instance where Sodexo and Feesers have submitted completing bids in response to an RFP? And my brother, Mr. Kessler, said that there have been. There are not. There are none in the record. There are none anywhere. In fact, actually, everybody said, this isn't the way that business works, so it's really an irrelevant question. Why would you ask if there's ever an RFP when the industry doesn't work on RFPs? They do, and the irony is, the documents that they cite as far as showing that we make proposals are responses to RFPs, and those are at, there's one at A2763, A3271, A5685, and you'll see when you look at those, part of it, it's a large document. It goes on for, the first one is A2763-3079, and what it has is it has a cover letter from Sodexo saying we're responding to your RFP. It attaches the RFP to the back, which has all the specifications provided by the institution as far as what kind of meals do they need? Is it a school? Are we going to have meals three times a day? What are the nutritional requirements? All that kind of stuff is all spelled out, and then Sodexo says here's what we propose. The people who, the other companies that submit responses are companies like Aramark, Delaware North, Compass, other food service management companies with whom we do compete every single time. Let me ask a question about the tertiary line competition. Mr. Kessler is adamant that, received adamant, it doesn't make any difference whether you folks are competing on the same level or not because it's okay for you to be on a different functional level under the Robinson Patent Act because you can still be held to be in head-to-head competition and thereby in violation of the Act. What's your response to that? My answer to that is I disagree. Some of this is a little bit of semantics. The reason that you need to show direct head-to-head competition on the same functional level is to show that you're actually competing. If you're on different functional levels, by and large except in the stow wagon type of situation, you're not competing. If there were some situation like that... Well, you say except the stow wagon situation because I think their view is these guys are the stow wagon situation. They may be offering other stuff, but they're really distributing as well as giving these other services. Why are we not in that situation? Because of the hypothetical that you posed earlier, about building the house. Another case that is similar to that is the Howe case where you have a Rolls-Royce dealership and then you have a car service repair shop. The argument made by the defense in that case was, well, they're on different functional levels because one is a retailer that sells cars at retail and the other one is just a service company. But the fact of the matter was they were doing the same thing. They were repairing Rolls-Royces with genuine Rolls-Royce parts. They were doing the same exact thing, so they were obviously an actual head-to-head competition on the same functional level. Here we are not. We never do the distribution like they do. We never do the same thing. There are statements in the brief that would suggest otherwise, but they're just not true. When you look at the record sites, Sodexo never takes the place of a distributor. The theory of competition espoused by Feesers is, well, if Feesers is selling to a customer and the customer then decides to hire Sodexo and become Telphop, well, we may lose that business. Well, it's not because we're competing directly with Feesers. It's because we've entered into agreements with other distributors. So what Feesers has lost is the customer because now we're the customer. Now Sodexo is the operator who chooses the distributor. And we choose a distributor like Cisco. In this particular example, we chose Cisco back in 2003 because they offered a better deal to Sodexo than Feesers did. The markup was less. Cisco is actually the purchaser. Cisco and Feesers are the purchasers for 2A, for the purposes of 2A. With Sodexo, though, being a customer, I mean, the line of reasoning fits within 2A. The question is whether the effect of such discrimination may be substantially to lessen competition. I mean, isn't that the issue? It really isn't. We're not disputing the tertiary analysis because, remember, Judge Rambo did not decide the issue of is Cisco the purchaser or is Sodexo the real purchaser. We argue that Cisco is because, frankly, Cisco is. But even for the sake of argument, it could fall within the 2A paradigm because you have different purchasers, but you have the allegation that it is a customer of Cisco whereby there is the competition, the effect of which would be to lessen competition. But no matter what, the favored and disfavored purchasers must be an actual head-to-head competition at the same functional level. That's what the Supreme Court just said. Well, the favored and disfavored purchaser could be Cisco and... I mean, Cisco and Feesers. And it is. Different purchasers... I'm just reading 2A. If we look at it that way, that gets complicated because, actually, they pay the same price in the first instance. But, again, it doesn't eliminate the requirement that Feesers proves that it competes with Sodexo. I guess we don't get down to competition. We get down to competition, and we get down to looking at the Volvo Trucks case. And Volvo Trucks made it very clear that, in fact, Volvo Trucks went even further than what we've even tried to argue in this case. Volvo Trucks went and said, it's got to be a transaction-by-transaction analysis. Are they competing for the same exact customers with the same exact transactions? That goes even beyond... If, in fact, that is the standard, which the Supreme Court said it is, then there's absolutely no evidence that it comes even remotely close in this record to proving that. But you don't even have to go that far. If you look at the Volvo Trucks case, they actually had 2 instances of head-to-head competition, and they said that wasn't enough. Here, there just isn't any head-to-head competition to do the same thing at the same functional level. And if the court were to find that the evidence that's been presented by Feasers in this case satisfied the actual competition requirement, it would essentially eviscerate that requirement and basically rip Robinson-Pattman from its moorings, which would run counter to the fundamental premise of the antitrust laws, which is to encourage price competition. Well, it sounds like a lot of this gets down to a basic factual assessment as to exactly, I think, Judge Jordan's questions to you, is exactly what you do and don't do and won't do and will do separate and apart from other things. We may need some supplemental record citations in development. Well, the judge carefully did that. To her great credit, she went through that entire 12,500 pages and distilled whatever specific instances that Feasers could point to and say, this is the actual competition. And she said none of those meet the standard, and she was correct. But then she decided, based upon the price causation aspect, what do you say to my question as to whether we could find that the standard was not appropriate and send it back for definitive holding? She did not create a new standard by any stretch of the imagination. What she was doing was responding to Feasers' novel competition theory because this was not a typical situation, like the first Feasers case. That was simple. It was distributor versus distributor. You didn't have to get into it. But because you've got a food service management company and a distributor and the allegation is they directly compete, which is completely contrary to sort of common sense, you have to say, well, what is the, what would be the addition that there is some actual competition for the cost, for the sale of goods, food, these products, eggs and potatoes by Microfoods? And the judge correctly said, if they're switching, in one instance because the food service manager left, that has nothing to do with this. There is no price competition because it's apples and oranges, basically. I mean, there's no price competitions because one sells, one distributes food and the other does something that's totally different. That's correct, Your Honor. Essentially. Further questions? Judge Jordan? Judge Aldersert? No questions. All right. We'll hear rebuttals from Mr. Kessler. Mr. Kessler, you reserve how many minutes? I reserve three, Your Honor. We're going to hold you to it. I'll try, Your Honor. Counsel is fundamentally misrepresenting the record to this court and I don't say it lightly. If your honors look, this is on the Integra issue to start. One example is A2085, a typical Integra procurement services agreement, which Integra enters into with self-operated customers, the exact same customers that FISA enters into, and I read to you from the third paragraph of that. Well, let's go with the second. Whereas Sodexo, the parent to Integra, through its corporate purchasing department, has entered into agreements for the manufacture and distribution of various food and food-related products in the United States and makes these agreements available to non-managed Sodexo clients through Integra, a Sodexo subsidiary, and Sodexo's agent for purposes of these arrangements, whereas Integra is a group purchasing organization in accordance with 42 U.S. CFR and has entered into agreements with manufacturers and distributors for the manufacture and distribution of food and food-related products and acts as a broker of these products and then goes on to say, we'll get you your food, we'll get it at low prices, and you should use us instead of a full-service food-loan distributor like FISA. This is undisputed, Your Honor. For him to get up here and say they don't buy and sell foods, what he means, again, and this is not right, Your Honor,  just like it does for, this is worse, Your Honor, this is worse than form over substance. The substance of these deals is they supply the food at the lower prices. That's why this case was filed, just for a juncture of relief, to level the playing field, which is just what the Robinson-Patman Act is about. Second, though, I don't have a little bit of time. I've got a question for you. Please. Now, what is the effect of if one were to take what you just read and say that Integra is selling food separately, that it's actually out there selling Michael's egg and potato products to the same people Feezers is trying to sell to? Yes. Does that have anything to do with the instances that you cited to Judge Rambo that she relied on in making her decision in this case, or were those all instances of Sodexo rather than the Integra subsidiary or division of Sodexo competing, in your view, with Feezers? Your Honor, the 12 specific ones that were discussed were all Sodexo. Out of the 600, it is difficult to tell because they gave us an overall customer list, and Integra was a new entity that was formed in this process, so I can't tell you, Your Honor, it's clear for the record which ones were Integra and which were not. But I can say the following, and this is very clear of the Morton Saul, which in Valvo, by the way, Morton Saul decided with favor. So there's no question that Valvo did not change Morton Saul one way or another. And in Morton Saul, what was said is we don't have to prove one head-to-head sale. There are two ways to prove competitive impact, not damages, competitive impact. One is lost sales and profits. If you do lost sales and profits, you must show, quote, head-to-head. That's what lost sales and profits are. The alternative way, which is what Morton Saul was all about, is substantial price discrimination over time, says in a price-sensitive industry involving goods of wide, great quality, and simply that to use the words of Haug and also to use the case of the Fifth Circuit case that we cited, I believe that case is the infusion case, is you have to be competing for the same dollars from the same customers. That's exactly what we did and how they were different entities. What was a Rolls-Royce dealership? So we don't know. Perhaps someone who buys parts of a Rolls-Royce dealership buys it because that's where they bought their car. We don't know that. But the Robinson-Patton Act says when you have major price discrimination like this, then you presume it is only a reasonable possibility. Ron is quite correct. It's a reasonable possibility. That's the only thing that's necessary. That's true. Thank you, counsel. I think we would like to arrange for a transcript of this oral argument. If counsel could arrange with the clerk's office to have a transcript made, it would be extremely helpful to the court, and we'd ask you to split the cost. We'd very much appreciate it. We'd be delighted to do that, Your Honor. Again, I apologize for going over. Thank you for your time. That's all right. Thank you very much, counsel. The case was well argued. We take it under advisement and call our last.